IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DERICK A. GEIGER,

      Movant,

v.                              Case No. 2:05-cv-00166
                                    Case No. 2:01-cr-00261-05

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant, Derick A. Geiger's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket sheet document # 688). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In September of 2002, a federal grand jury charged Defendant and six other individuals with various controlled substance offenses in a 12-count superseding indictment. (# 33). Defendant was charged with one count of conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, more than five kilograms of cocaine, and more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count Two). Defendant was also charged with possession of marijuana with intent to

deliver for remuneration, in violation of 21 U.S.C. § 841(a)(1)
(Count Twelve).   Attorney Donald L. Stennett was appointed to
represent Defendant on those charges.

On December 17, 2002, Defendant waived his right to indictment
(# 160), and entered a guilty plea (# 161), pursuant to a written
plea agreement (# 162), to a one-count Information alleging
conspiracy to distribute more than 50 kilograms of marijuana (#
149).  During the plea hearing, the following colloquy occurred:

> THE COURT:       Now, do we agree to the amount of
>                  marijuana attributable to this offense
>                  being 50 kilograms or more but less than
>                  100 kilograms? [This would have placed
>                  Defendant at a Level 20-24 in the
>                  Guidelines.]
>
> AUSA SCHWARTZ: The United States agrees, Your Honor.
>
> MR. STENNETT:  Defense agrees.
>
> THE COURT:       Mr. Geiger, do you understand you expose
>                  yourself to a maximum penalty of not more
>                  than 20 years imprisonment by entering
>                  into this plea agreement?
>
> THE DEFENDANT: Yes, Your Honor.

(# 698, Ex. A at 24).

The United States also addressed additional uncharged relevant
conduct it believed to be attributable to Defendant, which resulted
in a conversion to a marijuana equivalency of more than 10,000
kilograms but less than 30,000 kilograms.  (Id. at 17-22).  The
presiding District Judge clarified that the additional amounts were
not part of the offense conduct and ordered the preparation of a

Presentence Investigation Report ("PSR") by the United States Probation Office.

The PSR estimated that Defendant's relevant conduct in the conspiracy included 11,863.834 kilograms of marijuana equivalent. Prior to sentencing, Defendant, by counsel, submitted numerous objections to the PSR, including objections to the relevant conduct determination.

At Defendant's sentencing on May 15, 2003, Defendant withdrew all of his previous objections, with the exception of an objection to the relevant conduct attributed to him by Arbera Ross. According to the PSR, Ross indicated that he had purchased both marijuana and cocaine base from Defendant, and in particular that, in 1998 or 1999, he had purchased one-half kilogram of cocaine base from Defendant for $14,000 or $15,000. This amount alone resulted in a marijuana equivalency of 10,000 kilograms. Ross further stated that he had seen Defendant with a nine millimeter handgun on various occasions.

Ross testified for the government at the sentencing hearing, over Defendant's objection. Ross detailed the circumstances of how he had purchased a substantial quantity of drugs from Defendant, including a half-pound of marijuana for $600 and a half-kilogram of cocaine base for $14,000. Ross was cross-examined by Mr. Stennett and he also answered questions posed by the presiding District Judge. (# 698, Ex. B at 12-24). The district court found Ross's

3

testimony to be credible.  (Id. at 26-28).

Mr. Stennett then conferred with Defendant concerning his right to testify and dispute Ross's testimony, and Mr. Stennett was admonished by the court to advise Defendant of "all the ramifications" of his testimony.  Mr. Stennett withdrew his request for Defendant's testimony.  (Id. at 26).

The presiding District Judge found that 11,853.864 kilograms of marijuana equivalent was attributable to Defendant, which resulted in a base offense level of 36.  The court applied a two-level enhancement for Defendant's possession of a firearm, which raised Defendant's offense level to 38.  The court then granted a three-level reduction for acceptance of responsibility.  Thus, Defendant's total offense level was determined to be 35. [The total offense level would have been 23 without the attribution of the 10,000 kilograms of marijuana.]  With a criminal history category of I, Defendant's Guideline sentencing range was 168 to 210 months. [The Guideline sentencing range, at level 23, could have been 46-57 months.] There were no objections to the Guideline calculations. (Id. at 29-30).

The court sentenced Defendant at the bottom of the Guideline range to a term of imprisonment of 168 months, followed by a three-year term of supervised release.  The court waived a fine, but imposed a $100 special assessment. (Id. at 32-34).  A Judgment was entered on May 20, 2003.  (# 210).

4

Defendant filed a consolidated appeal of his sentence with his co-defendant, Lorenzo Maurice Venson, in the United States Court of Appeals for the Fourth Circuit. Defendant's appellate brief challenged the credibility of Arbera Ross' testimony and, thus, the amount of relevant conduct attributed by him to Defendant. (# 791, Ex. 2).

On May 4, 2004, the Fourth Circuit affirmed Defendant's sentence in its entirety. United States v. Geiger, No. 03-4434, 96 Fed. Appx. 863, 2004 WL 962767, (4th Cir., May 4, 2004)(per curiam)(unpublished). (# 323). The Fourth Circuit specifically found:

> Giving due deference to the district court's opportunity to judge the credibility of the witnesses, we reject Appellants' related claim that the district court erred in finding coconspirator testimony to be credible. [United States v. Sampson], 140 F.3d [585] at 591. Accordingly, we hold that the district court did not err in calculating the amount of narcotics attributed to both Venson and Geiger. [Citations omitted.]

(Id.)

On June 24, 2004, during the time in which Defendant could have filed a petition for a writ of certiorari in the United States Supreme Court, the United States Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004), a case which sent a shock wave through Federal and State courts. Beginning shortly after June 24, 2004, legal journals, newspapers, lawyers, and legal commentators engaged in widespread speculation as to whether the United States Sentencing Guidelines were rendered unconstitutional

5

under the reasoning of <u>Blakely</u>.  In keeping with today's high-tech web-logs ("blogs"), a blog devoted almost exclusively to <u>Blakely</u> issues became widely known and continues today.  *See* http://sentencing.typepad.com.  The uncertainty over the continued validity of the Sentencing Guidelines was so great that the Supreme Court expedited review of <u>United States v. Booker</u>, in which the Court ultimately ruled that the Sentencing Guidelines cannot be applied as mandatory restrictions on judicial discretion. Defendant's counsel neither moved for re-hearing <u>en banc</u>, nor filed a timely petition for a writ of certiorari.

On February 23, 2005, Defendant, acting <u>pro se</u>, filed the instant section 2255 motion (# 688), alleging the following grounds for relief:

1.   Defendant's sentence was increased based upon facts not admitted by Defendant, in violation of Defendant's Fifth and Sixth Amendment rights, and Defendant's counsel failed to properly challenge these violations at the district court level and on appeal.

2.   The district court was without jurisdiction to impose enhancements to Defendant's sentence.

3.   Ineffective assistance of counsel based upon Mr. Stennett's failure to allow Defendant to testify at sentencing.

4.   Ineffective assistance of counsel based upon Mr. Stennett's failure to challenge a breach of the plea agreement.

On March 24, 2005, pursuant to the undersigned's order, the United States filed a response to Defendant's section 2255 motion. (# 698).  On April 25, 2005, Defendant filed a reply brief.  (# 706).

On January 12, 2006, the undersigned ordered the United States to supplement the record with a true copy of the Brief of Appellant filed in Defendant's direct appeal, and to provide a declaration from Defendant's appointed counsel concerning his advice to Defendant about filing a petition for a writ of certiorari.  (# 785).  On February 8, 2006, the United States supplemented the record accordingly.  (# 791).  The affidavit of Donald Stennett provides in pertinent part:

> 6.   Mr. Geiger made it clear that he wished to file a petition for Writ of Certiorari in the United States Supreme Court, particularly based upon the issues raised in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), which was issued shortly after the judgment of the Fourth Circuit in this case.

> 7.   In calendaring the ninety (90) days for submission of the petition, counsel counted ninety (90) days from the issuance of the mandate rather than the issuance of the judgment of the Fourth Circuit. Consequently, the deadline was missed.

> 8.   When considering potential remedies for this matter, the undersigned consulted with Mary Lou Newberger, Federal Public Defender for the Southern District of West Virginia.  Based upon his discussions with Ms. Newberger, counsel prepared a typed 2255 petition and forwarded it [to] Movant with instructions to file the same with this Court.

> 9.   The sentencing court observed that, "the Court finds by a *preponderance of the evidence* that the

7

testimony of Mr. Ross is credible. *I always have substantial doubts* when people have so much at stake and they get up on the stand and say, as Mr. Ross himself said, you know, the Government's made up stories on him from other people that told him things . . . . there is such a large motivation to help one's self if one can. The Court, nevertheless, and the Government, obviously is left to try to determine the truth of the matter as best we can based upon the evidence we hear in Court. *Do I suspect that it's possible that what he's saying may not be true? Yes, I suspect that's possible."*

10. Given that language, and the Supreme Court's subsequent decision in *United States v. Booker*, 543 U.S., 125 S. Ct. 738 (2005), I believe it is very possible that Judge Goodwin would change his opinion regarding the weight of Mr. Ross's testimony.

(# 791, Ex. 1). The matter is now ripe for determination.

## TIMELINESS OF MOTION

Prior to 1996, a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 was not subject to a specific time limitation with respect to filing of the motion. However, in 1996, Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996,(hereinafter the "AEDPA"), which established a one-year period of limitation governing the filing of motions for collateral relief under 28 U.S.C. § 2255.

The one-year period runs from the latest of one of four specified events:

(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or Laws of the United States is removed if the movant was prevented from making such motion by

8

governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court if that right has been duly recognized by the Supreme Court and made retroactively applicable  to cases on review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  Defendant's conviction became final on or about August 4, 2004, when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired.  Clay v. United States, 537 U.S. 522 (2003).  Therefore, the undersigned proposes that the presiding District Judge **FIND** that the one-year statute of limitations began to run on August 5, 2004, and that Defendant's section 2255 motion filed on February 23, 2005 was timely.

## ANALYSIS

### A.  Enhancement of sentence based on facts not admitted by Defendant.

In Ground One of his section 2255 motion, Defendant asserts that his sentence violated his Fifth and Sixth Amendment rights because the sentence was enhanced based upon facts not admitted by Defendant. (# 688 at 5, Ground One).  In Ground Two of his motion, Defendant asserts that the district court was without jurisdiction to enhance Defendant's sentence.  (Id., Ground Two).  Defendant bases both of these claims, in part, on the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005).

In Ground One, Defendant states:

> Here, [Defendant] entered a plea of guilty to a conspiracy to distribute 50 kilograms or more of marijuana. In fact, during the plea colloquy with the court, both the United States and [Defendant's] counsel agreed that the amount of marijuana attributable to this offense was "50 kilograms or more but less than 100 kilograms." (Plea Tr. at 24). As such, the only "facts" admitted to by [Defendant] results in a base offense level of 20 [e.g., see U.S.S.G. § 2D1.1(c)(10)], and a "statutory maximum" for Apprendi purposes of 41 months based upon [Defendant's] Criminal History Category of I. [U.S.S.G. Sentencing Table].
>
> At sentencing, however, the Court determined that "the amount of marijuana attributable to the defendant is 11,863.864 kilograms of marijuana equivalent." ([Sentencing] Tr. at 29). Thus, the Court increased [Defendant's] punishment from a guideline level of 20 to a guideline level of 38 (prior to the 3-level reduction for acceptance of responsibility), by determining facts that were not included in this indictment or admitted to by [Defendant]. As such, these findings increased [Defendant's] "statutory maximum for Apprendi purposes" from 41 months to 210 months. Such determinations are in direct violation of [Defendant's] Fifth and Sixth Amendment rights, affected his substantial rights, seriously affected the fairness, integrity and public reputation of this judicial proceeding, and resulted in a significantly increased sentence.

(# 689 at 7-8). In Ground Two of his motion, Defendant states:

> In addition to this sentence being determined in violation of [Defendant's] Fifth and Sixth Amendment rights, [Defendant] also respectfully submits that the Court was without jurisdiction to impose a Guideline sentence . . . . the Supreme Court made clear that the mandatory nature of the Guidelines was and had been unconstitutional since its enactment in 1984. As such, this Court lacked the authority and jurisdiction to impose a sentence based solely on the Guidelines.

(Id. at 12).

10

On January 12, 2005, the Supreme Court decided <u>Booker</u>, which reaffirmed the Court's holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), applied the holding in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  125 S. Ct. at 756.  The <u>Booker</u> holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting <u>Griffith v. Kentucky</u>, 479 U.S. 314, 328 (1987)).

When Defendant filed his section 2255 motion, his case had concluded direct review and was final.  Thus <u>Booker</u> does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.  <u>United States v. Morris</u>, No. 04-7889, slip op. at 11 (4th Cir. Nov. 7, 2005).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his alleged Fifth and Sixth Amendment violations as stated in Grounds One and Two of his section 2255 motion.  However, if the presiding District Judge adopts the proposed findings and recommendation of the undersigned with respect to Defendant's ineffective assistance of counsel claim concerning his appellate rights, then Defendant

will presumably be subject to re-sentencing, with a re-evaluation of his relevant conduct and the application of the advisory Guidelines to his sentence.

**B. Ineffective Assistance of Counsel Claims**

Defendant also asserts several claims of ineffective assistance of counsel. He claims that Mr. Stennett failed to challenge the increase of Defendant's sentence based upon facts not admitted by Defendant, that Mr. Stennett failed to object to a breach of his plea agreement, and that Mr. Stennett improperly advised him with regard to his decision not to testify at his sentencing hearing.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-91. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. 466 U.S. at 688-89.

> In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine

12

whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would not have plead guilty and would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52 (1985). Before a guilty plea will be set aside based upon the fact that the defendant was incompetently advised, it must be shown that: (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process, if the case had proceeded to trial; and (3) the guilty plea must have been motivated by the error. See United States v. Craig, 985 F.2d 175, 179 (4th Cir. 1993).

1. Failure to challenge enhancements.

In Ground One of his motion, Defendant also asserts that his counsel was ineffective, both at sentencing and on appeal, for

failing to challenge the increase of his sentence based upon facts

not admitted by Defendant.  (# 689 at 10-11).  The United States

asserts:

> Essentially, defendant characterizes his attorney as
> ineffective for failing to adequately foresee that the
> Supreme Court would invalidate a portion of the
> Sentencing Guidelines nearly a year and a half after
> defendant's sentence was imposed.
>
> * * *
>
> At the time defendant was sentenced, federal courts had
> almost universally rejected any claim that Apprendi or
> any subsequent decision had any impact on the United
> States Sentencing Guidelines.  Indeed, as late a[s] 2004,
> the United States Court of Appeals for the Fourth
> Circuit, in United States v. Hammoud, 381 F.3d 316 (4th
> Cir. 2004), expressly rejected a Sixth Amendment
> challenge to the United States Sentencing Guidelines.
> Even if Mr. Stennett had possessed the prophetic ability
> to foresee the possibility of United States v. Booker, an
> objection on Sixth Amendment grounds at defendant's
> sentencing would have been futile.  Defendant cannot,
> therefore, demonstrate that the failure to raise a Sixth
> Amendment challenge at the time of his sentence in any
> way prejudiced his position in the criminal proceeding.

(# 698 at 7-9).  Defendant's reply repeats his assertion that, had

Mr. Stennett properly challenged his sentence, there is a

reasonable probability that the outcome would have been different.

(# 706 at 3-4).

At the time of sentencing, Mr. Stennett was not expected to be

clairvoyant concerning the Supreme Court's subsequent ruling in

Booker, and Defendant's sentence was appropriate under the ruling

in Apprendi at that time.  Mr. Stennett lodged various objections

to the relevant conduct attributed to Defendant in the PSR.

14

However, at the sentencing hearing, based upon agreements worked out with the United States, Mr. Stennett withdrew all of the objections, with the exception of an objection to the relevant conduct attributed to Defendant through Arbera Ross. Mr. Stennett vigorously cross-examined Ross and challenged his testimony. Nevertheless, the district court ultimately found Ross's testimony to be credible and attributed that conduct to Defendant. Mr. Stennett also challenged Ross's credibility and the resultant attribution of relevant conduct in Defendant's direct appeal. That challenge was also unsuccessful.

Based upon all the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that Mr. Stennett's conduct with regard to challenging the relevant conduct attributed to Defendant at sentencing and in his direct appeal was reasonable under the circumstances.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no collateral relief on his ineffective assistance of counsel claim, as stated in Ground One of his motion, concerning his sentencing and the issues raised on direct appeal.

Mr. Stennett's obligation to Defendant did not end there, however. The Plan of the United States Court of Appeals for the Fourth Circuit In Implementation of The Criminal Justice Act ("CJA Plan") provides as follows:

15

<u>V.   ATTORNEY'S DUTY TO CONTINUE REPRESENTATION</u>

\* \* \*

2.   <u>Appellate Counsel</u>: Every attorney, including retained counsel, who represents a defendant in this court shall continue to represent his client after termination of the appeal unless relieved of further responsibility by this court or the Supreme Court.  Where counsel has not been relieved:

If the judgment of this court is adverse to the defendant, counsel shall inform the defendant, in writing, of his right to petition the Supreme Court for a writ of certiorari.  If the defendant, in writing, so requests and in counsel's considered judgment there are grounds for seeking Supreme Court review, counsel shall prepare and file a timely petition for such a writ and transmit a copy to the defendant.  Thereafter, unless otherwise instructed by the Supreme Court or its clerk, or unless any applicable rule, order or plan of the Supreme Court shall otherwise provide, counsel shall take whatever further steps are necessary to protect the rights of the defendant, until the petition is granted or denied.

If the appellant requests that a petition for writ of certiorari be filed but counsel believes that such a petition would be frivolous, counsel may file a motion to withdraw with this court wherein counsel requests to be relieved of the responsibility of filing a petition for writ of certiorari.  The motion must reflect that a copy was served on the client.

Similar language appears in the "Memorandum To Attorneys Appointed Under The Criminal Justice Act," also published by the Fourth Circuit.

The American Bar Association's publication which sets standards for attorneys who defend persons charged with crimes addresses the appellate duties of counsel as follows:

Standard 4-8.3 Counsel on Appeal

(a) Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own

16

determination that the appeal lacks merit.

* * *

(c) If the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court.  When counsel cannot continue without misleading the court, counsel may request permission to withdraw.

ABA Standards for Criminal Justice, Prosecution Function and Defense Function 3rd ed., § 4-8.3, at 239 (1993).  In the Commentary to the Standard, the following appears:

Once counsel has accepted appointment or has been retained to pursue a client's case on appeal, he or she should continue representation of the client until all direct appeal possibilities desired to be pursued by the client are exhausted, new counsel is substituted, or a court otherwise orders or permits counsel to withdraw.

Id., at 242.

As noted in Mr. Stennett's affidavit, Defendant requested that Mr. Stennett file a petition for a writ of certiorari on his behalf, but Mr. Stennett missed the deadline for filing the petition, a mistake which clearly fell below an objective standard of reasonableness.

While there is no guarantee that Defendant's sentence would be different if Blakely and Booker were applied, the only certain way to obtain review of Defendant's case in light of those decisions was to continue his direct appeal.  It is highly likely that, if a petition for a writ of certiorari had been filed, Defendant's case, like thousands similar to it, would have been held pending the

17

anticipated Supreme Court decision on the validity of the Sentencing Guidelines.  Most of those cases have been remanded for proceedings consistent with Booker.

When Defendant was sentenced, Judge Goodwin applied the Guidelines as he was mandated to do, having heard testimony and made findings of fact as to relevant conduct.  Judge Goodwin has described the post-Booker advisory Guideline regime as "a completely new universe for federal sentencing courts."  United States v. Gray, 362 F. Supp.2d 714, 722 (S.D. W. Va. 2005).

The procedural and substantive differences between continuing a direct appeal and filing a § 2255 motion are significant indeed.  The Booker decision specifically states that it is to be applied "to all cases on direct review or not yet final."  125 S. Ct. at 769.  Based on Booker, the Fourth Circuit has ruled that defendants whose sentences were premised on drug quantities neither found by the jury nor admitted by the defendant, and which were imposed under a mandatory Sentencing Guidelines regime, are entitled to be resentenced.  United States v. Hughes, 401 F.3d 540, 555-56 (4th Cir. 2005).

By contrast, ten circuit courts of appeals (including the Fourth) have ruled that Booker does not apply retroactively to cases on collateral review.  See United States v. Morris, 429 F.3d 65 (4th Cir. 2005); United States v. Cruz, 423 F.3d 1119 (9th Cir. 2005); Padilla v. United States, 416 F.3d 424 (5th Cir. 2005)(per

18

curiam); <u>Never Misses A Shot v. United States</u>, 413 F.3d 781 (8th Cir. 2005)(per curiam); <u>United States v. Bellamy</u>, 411 F.3d 1182 (10th Cir. 2005); <u>Lloyd v. United States</u>, 407 F.3d 608 (3rd Cir.), <u>cert. denied</u>, 126 S. Ct. 288 (2005); <u>Guzman v. United States</u>, 404 F.3d 139 (2nd Cir.), <u>cert. denied</u>, <u>126</u> S. Ct. 731 (2005); <u>Humphress v. United States</u>, 398 F.3d 855 (6th Cir.), <u>cert. denied</u>, 126 S. Ct. 199 (2005); <u>Varela v. United States</u>, 400 F.3d 864 (11th Cir.)(per curiam), <u>cert. denied</u>, 126 S. Ct. 312 (2005); <u>McReynolds v. United States</u>, 397 F.3d 479 (7th Cir.), <u>cert. denied</u>, 125 S. Ct. 2559 (2005). Not one circuit court of appeals has decided that <u>Blakely</u> or <u>Booker</u> applies retroactively on collateral review.

As a result of Mr. Stennett's failure to comply with his client's wishes to continue to pursue his direct appeal, Defendant was deprived of the opportunity to have his sentence remanded for proceedings consistent with <u>Booker</u>, and, possibly, imposed by Judge Goodwin in the "completely new universe" of non-mandatory Guidelines. The post-<u>Booker</u> system is less restrictive and district judges have more discretion than previously. It is possible that post-<u>Booker</u>, Defendant would receive the same sentence as pre-<u>Booker</u>; knowing such a fact for a certainty is not the standard. Rather, to determine whether a defendant has been prejudiced as a result of his attorney's failure to provide effective assistance of counsel, the court must determine whether there is a "reasonable probability" that the result of the

19

proceeding would have been different.

Defendant admitted to conspiring to distribute between 50 and 100 kilograms of marijuana. Such an admission put him at a Guideline Level of between 20 and 24. Based upon the relevant conduct attributed to Defendant by Mr. Ross, conduct which Defendant has not admitted, and which has not been determined beyond a reasonable doubt by a jury, Defendant's resultant offense level was 35.

Under the mandatory Guideline scheme, Judge Goodwin was obligated to sentence Defendant within a range of 168-210 months. Without the relevant conduct attribution, Defendant's sentence could have been as low as 46-57 months. Defendant objected to the attribution of relevant conduct based upon Mr. Ross's testimony throughout his criminal proceedings, and there is a reasonable probability that, in the exercise of his discretion, Judge Goodwin might not give Mr. Ross's testimony the weight he gave it under the mandatory scheme. Thus, the "reasonable probability" standard has been met.

For the foregoing reasons, the undersigned proposes that the presiding District Judge **FIND** that:

-- Mr. Stennett's representation of Defendant post-direct appeal fell below an objective standard of reasonableness in that he failed to preserve Defendant's right to pursue his direct appeal to the United States Supreme Court.

20

-- Defendant was denied effective assistance of counsel in connection with his appeal on and after June 24, 2004.

- - Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different in that Defendant's case would likely have been remanded for proceedings consistent with <u>Booker</u>.

> 2. Failure to challenge alleged breach of plea agreement.

In Ground Four of his motion, Defendant asserts that his counsel was ineffective because he failed to challenge an alleged breach of Defendant's plea agreement when the court sentenced Defendant based upon drug amounts greater than 100 kilograms. Specifically, Defendant states:

> Although not titled as such, [Defendant's] written plea agreement was a Rule 11(e)(1)(B) [sic; 11(c)(1)(B)][1] agreement. However, when the Court initiated a discussion that led [] all parties to agree that the amount of marijuana attributable to [Defendant] was "50 kilograms or more but less than 100 kilograms," the Court changed the plea agreement to a Rule 11(e)(1)(C) [sic; 11(c)(1)(C)] plea. See <u>United States v. Ebel</u>, 299 F.3d 187, 192 (3rd Cir. 2002)("Moreover, if we examine the types of plea agreements provided in Rule 11, we can see that the District Judge's commitment to the 37 month sentence in effect transformed the plea agreement here to a Rule 11(e)(1)(C) [sic; Rule 11(c)(1)(C)] plea.")

> While the Court's participation in this plea process is a violation of Rule 11, the error did not affect

---

[1]   In 2002, Rule 11 was amended and reorganized.  The procedure for plea agreements is now set forth in subsection (c) of the Rule.

> [Defendant's] substantial rights because [Defendant] had
> already decided to plead guilty, and has no desire to now
> withdraw his plea.  See <u>United States v. Cannady</u>, 283
> F.3d 641, 646 (4th Cir. 2002)(holding that Rule 11 not
> violated by judge's participation in an "already
> negotiated plea agreement").  Nevertheless, the agreement
> initiated by the Court resulted in an 11(e)(1)(C) [sic;
> 11(c)(1)(C)] agreement for a specific sentence, i.e., for
> a sentence based on "50 kilograms or more but less than
> 100 kilograms" of marijuana.  Critically, this agreement
> was accepted by all parties.  As such, the sentence
> imposed in this case constitutes a breach of that plea
> agreement.

(# 689 at 18-19).  Defendant further asserts that his counsel's

failure to challenge this alleged breach was not "reasonably

competent" and that his sentence should be "corrected to reflect

specific performance of the agreement initiated by the Court and

agreed to by all the parties on the record."  (<u>Id.</u> at 19).

The United States's response states:

> Defendant's selective use of the sentencing transcript
> implies that the United States somehow agreed to a lesser
> range of relevant conduct than that established at
> sentencing.  The record is clear however, that defendant
> was always on notice that his plea agreement provided for
> a potential sentence of up to twenty years and that the
> court would determine the guideline range.

(# 698 at 10).

Defendant's reply repeats the arguments made in his section

2255 motion and asserts that any ambiguity in the plea agreement

should be construed in accordance with his reasonable understanding

thereof.  (# 706 at 7-11).

Defendant's assertions concerning his plea agreement are

misplaced.  During the plea hearing, the district court simply

clarified that the amount of marijuana involved in the offense of conviction was "50 kilograms or more but less than 100 kilograms" of marijuana. (# 698, Ex. A at 24). The following colloquy also occurred:

> THE COURT:  Have you discussed the application of the guidelines with you client, Mr. Stennett?
>
> MR. STENNETT:  Yes, I have.
>
> THE COURT:  Mr. Geiger, I won't be able to determine the guideline sentence for your case until the pre-sentence report has been completed, you and the Government have an opportunity to review it and challenge the facts in the report. Do you understand?
>
> THE DEFENDANT: Yes, sir, Your Honor.
>
> THE COURT:  Do you understand the sentence I impose may be different from any estimate that Mr. Stennett may have given you or anyone else may have given you?
>
> THE DEFENDANT: Yes, sir, Your Honor.

(Id. at 27). The Guidelines provide for enhancements based upon relevant conduct not charged in the charging document and not admitted by the defendant as offense conduct, and the inclusion of such relevant conduct in the determination of Defendant's sentence was not a breach of his plea agreement.

The undersigned proposes that the presiding District Judge **FIND** that the district court did not improperly participate in a plea negotiation, that the discussion of the amount of marijuana involved as offense conduct did not constitute an agreement for a specific sentence or sentencing range under Rule 11(c)(1)(C), that the imposition of a sentence based upon relevant conduct above and beyond that of the offense conduct agreed to during Defendant's plea hearing did not constitute a breach of the plea agreement, and

that Mr. Stennett's failure to object to such sentence was not constitutionally ineffective.

        3.    Failure to allow Defendant to testify at sentencing.

In Ground Three of his motion, Defendant asserts that Mr. Stennett improperly advised Defendant not to testify at his sentencing hearing. Defendant states:

> At the conclusion of Ross's testimony, the Court inquired of [Defendant's] counsel whether he wished to present rebuttal evidence. (Sent. Tr. at 25). However, counsel declined to present [] such evidence or testimony. As a result, the Court had no choice but to accept Ross's testimony and overrule the objection. Specifically, the Court stated:
>
>> "His [Ross] is the only testimony with regard to the specific incident that the Court may consider. I have no evidence to the contrary other than circumstantial evidence."
>
> (Sent. Tr. at 26).
>
> * * *
>
> Simply put, it is indisputable that counsel's failure to allow [Defendant] to testify in rebuttal to Ross's testimony resulted in these drug weights being attributed to [Defendant].

(# 689 at 14-15). Defendant asserts that he attempted to tell Mr. Stennett that he wished to testify, but Mr. Stennett advised him that if he testified falsely, he would be charged with perjury. (Id.)

The United States' response states:

> Defendant's claim that Mr. Stennett improperly advised him with regard to the implications of testifying at sentencing are equally invalid. It appears from the sentencing transcript that defendant did consult with Mr.

24

> Stennett regarding the possibility of testifying in
> opposition to the government's witness, [Arbera] Ross.
> Significantly, at the time defendant apparently discussed
> with Mr. Stennett the possibility of testifying in
> rebuttal to Mr. Ross, the Court had already found Ross's
> testimony credible.

(# 698 at 9).  The United States further asserts that, had

Defendant testified, it would have resulted in an increased

sentence, due to the loss of the credit he received for acceptance

of responsibility.  The response states, "[t]he district court

implicitly recognized that risk when it cautioned Mr. Stennett to

warn his client about the 'ramifications' of taking the stand."

(Id. at 10).  Accordingly, the United States asserts that the

recommendation not to testify was "a sound exercise in legal

practice and entirely within the bounds of competent

representation."  (Id.)

Defendant's reply brief asserts that the district court had

not found Ross's testimony to be credible at the time Mr. Stennett

made the decision not to have Defendant testify.  (# 706 at 5-6).

Defendant states that he twice told Mr. Stennett that he wished to

testify and that Mr. Stennett "refused to allow him to do so."

(Id. at 6).

Defendant further asserts that the United States' claim that

he would have lost his credit for acceptance of responsibility is

speculative.  (Id.)  Defendant requests that his sentence be

corrected to reflect a sentence that excludes the drug quantities

attributed to him by Ross, or that an evidentiary hearing be held

on the matter.  (<u>Id.</u> at 7).

A review of the sentencing transcript reveals that the district court had made a finding that Ross's testimony was "credible by a preponderance of the evidence" before Mr. Stennett asked to speak to Defendant about testifying, and that the district court admonished Mr. Stennett to discuss with Defendant the "ramifications" of testifying.  (# 698, Ex. B at 26).

In a decision concerning this issue, the Fourth Circuit held:

> [T]he advice provided by a criminal defense lawyer on whether his clients should testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1065, 104 S. Ct. 750, 79 L.Ed.2d 207 (1984); <u>see also</u> <u>Jones v. Murray</u>, 947 F.2d 1106, 1116 n.6 (4th Cir. 1991)(reiterating principle that advice to testify is paradigmatic of strategic decision); <u>Rogers-Bey v. Lane</u>, 896 F.2d 279, 283 (7th Cir. 1990)(concluding that counsel's advice not to testify based in part on erroneous belief that defendant could be impeached by prior conviction, was not deficient performance); <u>Reyes-Vejerano v. United States</u>, 117 F. Supp.2d 103, 108–09 (D.P.R. 2000)("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]").

<u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002).  Thus, if Defendant is arguing that his counsel's advise was erroneous, the undersigned proposes that the presiding District Judge **FIND** that such advise was a strategic decision that is not evidence of ineffective assistance of counsel.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on Ground Three of his motion.

26

For the reasons stated herein, it is respectfully **RECOMMENDED** that the District Court **GRANT** Defendant's Motion filed pursuant to 28 U.S.C. § 2255, with respect to his claim of ineffective assistance of his appellate counsel, as asserted in Ground One of his motion, and **DENY** the other grounds for relief contained in Defendant's section 2255 motion (# 688).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S.

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Derick A. Geiger, and to counsel of record.

| | |
|---|---|
| <u>   July 19, 2005   </u> | <u>Mary E. Stanley</u> |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |